The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Morgan. As the appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives, the Full Commission modifies and affirms the Opinion and Award of the Deputy Commissioner.
 *********** EVIDENTIARY RULINGS
All objections made by the parties during the depositions have been ruled on in accordance with applicable law and the Opinion and Award in this case.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. On 23 August 1994, the employer-employee relationship existed between plaintiff and defendant-employer.
2. On that date defendant-employer was a certified self-insured, with Associated Risk Managers as the servicing agent.
3. The parties stipulated to the following exhibits, which were admitted into evidence at the hearing of this matter:
 a. Stipulated Exhibit 1, a video tape of the machine on which plaintiff was working at the time of his injury.
 b. Stipulated Exhibit 2, a two-page laboratory report from High Point Regional Hospital dated 26 August 1994.
 ***********
The Full Commission modifies and affirms the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. On 23 August 1994, plaintiff was employed by defendant-employer as the operator of a veneer clipper, a machine which cut pieces of veneer with a guillotine type blade.
2. Plaintiff's job required him to feed pieces of wood veneer underneath the clipper blade, where the veneer pieces would hit nails which had been placed as stops on the clipper table surface. Once a veneer piece hit a stop, the clipper operator would depress a foot pedal which would cause the clipper blade to cut the piece of veneer to the appropriate length.
3. Approximately six inches from the clipper blade was a guard, which was intended to keep the operator from placing his hand under the clipper blade. Due to the relatively small size of plaintiff's hand and wrist, he was able to reach under the guard and place his hand directly underneath the clipper blade.
4. Between the hours of approximately 5:00 p.m. on 22 August 1994 and 2:00 a.m. on the morning of 23 August 1994, plaintiff, with four or five friends, drank four or five cases of beer.
5. Plaintiff reported to work at approximately 7:00 a.m. on 23 August 1994. At approximately 9:30 a.m. on that date, plaintiff reached underneath the guard on the clipper machine to retrieve a piece of veneer from under the clipper blade. While plaintiff's hand was underneath the clipper blade he depressed the foot pedal, causing the clipper blade to come down cutting off the ends of three fingers.
6. Immediately after the accident, some other employees summoned Jason Callahan, plaintiff's supervisor, who went to assist plaintiff. Mr. Callahan asked someone to get a bag of ice, which was used to carry the severed ends of plaintiff's fingers. Mr. Callahan then drove plaintiff to the hospital. Plaintiff smelled strongly of alcohol.
7. Plaintiff was treated at High Point Regional Hospital for partial amputations of the second, third, and fourth fingers of his left hand. While at the hospital, plaintiff underwent testing for the presence of drugs and alcohol. The testing sample was collected at 2:58 p.m. on 23 August 1994. The test results were positive for marijuana metabolites, and indicated a blood alcohol level of 0.23g/dL(%).
8. Plaintiff, by his own testimony, was a habitual heavy drinker, who had been drinking every day since the age of seventeen. Plaintiff's tolerance to alcohol would have had an effect on his body's ability to metabolize, or eliminate, ethanol. The average rate of elimination for an non-alcoholic individual is between 10 and 20 milligrams per deciliter per hour, or .01 to .02 grams per deciliter per hour. Alcoholics eliminate ethanol at rates between .02 to .04 grams per deciliter per hour. Based upon an elimination rate of .03 grams per deciliter per hour, which is in the middle of the range of elimination for alcoholics, plaintiff's blood alcohol level at the time of his accident would have been, and the undersigned finds that it was, approximately 0.40g/dL(%).
9. Plaintiff presented the testimony of Dr. Richard G. Pearson, an expert in the field of ergonomics, who stated that in his expert opinion, the presence of alcohol in plaintiff's system was irrelevant to his injury. Dr. Pearson believed that plaintiff's job was performed so mechanically and without conscious thought, that he was not called upon to use his ability to make judgments, solve problems, or make decisions and, accordingly, plaintiff's injury was not causally related to his inebriated state. However, Dr. Pearson also stated that if plaintiff was called upon to make decisions or use judgment, then his performance would be compromised by the presence of alcohol.
10. Even assuming that plaintiff's performance of his normal job duties did not require the use of conscious thought which would be affected by the presence of alcohol, the undersigned find that the placing of plaintiff's fingers under the cutting blade, and then pressing the foot button so that the cutting blade would descend through plaintiff's fingers, is separate and apart from the performance of plaintiff's normal job duties. The decision to place his fingers in a position of danger and then the inability to prevent his foot from depressing the blade trigger are clearly examples of decision-making, judgment, and conscious performance which were impaired by the presence of alcohol in plaintiff's system, and which caused his injury.
11. At a blood alcohol level of 0.40g/dL(%) plaintiff would have been, and the undersigned find that he was, grossly impaired at the time of his accident with regard to his decision making and risk assessment skills, judgment, perception of time, and reaction time.
12. Plaintiff's intoxication was a proximate cause of his injury by accident in that, among other things, it impaired his judgment to the point where he either did not realize, or disregarded, the very serious risk involved in placing his left hand underneath the clipper blade. Plaintiff's impairment was also a proximate cause of his actions in depressing the foot pedal while his left hand was underneath the clipper blade.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff suffered an injury by accident arising out and in the course of his employment on 23 August 1994. However, plaintiff's injury was proximately caused by his intoxication. N.C. Gen. Stat. § 97-12. The facts of this case are distinguishable from those in Gaddy v. Anson Wood Products,92 N.C. App. 483, 374 S.E.2d 477 (1988) as cited by plaintiff. InGaddy, the intoxicated plaintiff was injured by a machine which started suddenly, through no overt action of the plaintiff. Accordingly, the plaintiff's intoxicated condition was not a factor in the resulting injury. In the case before us, plaintiff's injury is the direct result of his placing his fingers in a position of danger, then stepping on the blade trigger which caused the injury. These overt actions on plaintiff's part were affected by his intoxicated condition, and so bar recovery under the Act. As plaintiff's injury was proximately caused by his intoxication, his claim for compensation must be denied.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Plaintiff's claim for compensation must be, and hereby is DENIED.
2. Each side shall pay its own costs.
 *********** S/ _______________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/ _____________________ CHRISTOPHER SCOTT COMMISSIONER